# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:10cv204
### [consolidating 1:10cv204 & 1:10cv233]

| | | |
|---|---|---|
| RDLG, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| RPM GROUP, LLC; RPM GROUP | ) | |
| BROKERAGE, LLC; FRED M. | ) | |
| LEONARD, III; JESSICA LEWIS | ) | |
| LEONARD; JASON BENTON; | ) | |
| NICK JAMES; and DEXTER | ) | |
| HUBBARD, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| RPM GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| RDLG, LLC; and GLENN G. GOLDAN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on defendants RDLG, LLC's and Glenn

G. Goldan's (hereinafter "defendants") Motion to Dismiss (#30).[1] On November 15, 2010, plaintiff RPM Group, LLC (hereinafter "plaintiff") filed its Response (#31, at p. 32), and on November 29, 2010, the defendants filed their Reply (#31, at p. 41). Such motion is now ripe for consideration.[2] Having carefully considered such motions, the briefs, and the Complaint, the undersigned respectfully submits the following findings, conclusions, and recommendation.[3]

## FINDINGS AND CONCLUSIONS

### I.     Background

### A.     Plaintiff's Contentions

This action concerns a marketing agreement for the sale of the remaining residential building lots in a development located in McDowell County, North

---

[1]     The Motion to Dismiss (#27) filed December 6, 2010, is not ripe for consideration, but is directed to counterclaims which mirror the claims discussed herein. The doctrine of *law of the case* may, respectfully, provide resolution of that motion once the district court has resolved the motion that is the subject of this recommendation.

[2]     These actions were consolidated, and docket entry numbers cited reference the pleadings in the consolidated case.

[3]     The court notes that the plaintiff did not allege in its Complaint the names of its own members or the members of the defendants, both of which are LLCs. See Carden v. Arkoma Associates, 494 U.S. 185, 195 (1990);  Mecklenburg County v. Time Warner Entertainment-Advance/ Newhouse Partnership,  2010 WL 391279 (W.D.N.C. Jan. 26, 2010). In the Notice of Removal (#1), the defendants state that RDLG, LLC, has two members: the first is a California LLC consisting of 31 members, all of which are residents of either California or New Jersey; and that the second member is a California resident acting as a receiver for a California corporation. It goes on to state that the plaintiff is also an LLC, the members of which are all citizens and residents of Tennessee.  Notice of Removal, at ¶¶ 8-9.

Carolina. In the summer of 2010, defendant RDLG, LLC, a California land development company, hired the plaintiff, a real estate marketing firm located in Tennessee, to market and then sell during an on-location sales event the remaining, unsold lots in defendants' development, which is known as "Linville Falls Mountain Club and Preserve." <u>See</u> Complaint (hereinafter "Compl."), Ex. 1 ("Marketing Agreement").

Plaintiff alleges in its Complaint that the parties agreed to split the upfront $425,000.00 marketing costs, with the plaintiff first recouping its costs by receiving 100 percent (100%) of the net proceeds of lots sales until their costs were reimbursed and that defendants would, thereafter, recoup their costs in a similar manner. Compl., at ¶¶ 12-13. After both parties' costs were recouped, the plaintiff would then be entitled to receive a commission of 22 percent (22%) of the gross sales price of each lot closed. <u>Id.</u>, at ¶ 13.

The plaintiff alleges that in the run-up to the sales event, defendants failed to make lot improvements required "in accordance with the approved HUD form," and that this failure eventually resulted in fewer lot sales at lower prices. <u>Id.</u>, at ¶ 14. It further alleges that, beyond failing to make improvements to the lots, the defendants failed to otherwise fulfill their obligations under the marketing agreement, including failing to assist plaintiff in pricing the lots, failing to provide plats, failing to

reimburse marketing costs, and failing "to pay commissions to RPM." Id., at ¶ 16.

**B.    Plaintiff's Claims for Relief**

In its First Claim for Relief, the plaintiff asserts a cause of action for breach of contract. Id., at ¶¶ 17-19. It contends that the defendants breached the marketing agreement by failing to make the property ready for sale, failing to cooperate, and failing to make information and documentation available, all of which it contends were required by the agreement. Id., at ¶¶ 17-18. The plaintiff projects that had defendants honored the agreement, it would have sold a substantial majority of the 102 available lots, rather than the 18 lots it actually sold, which would have resulted in "commissions to RPM in excess of $800,000.00." Id., at ¶ 18. It alleges that it sustained damages of at least $212,500.00 in un-reimbursed marketing expenses, incurred additional damages when it performed the defendants' obligations in making the properties ready for sale, lost commissions, and sustained other damages. Id., at ¶ 19.

In its Second Claim for Relief, the plaintiff asserts a cause of action for tortious interference with the contract asserted in the first claim. Id., at ¶¶ 20-25. In this cause of action, plaintiff alleges that the corporate defendant was being "directed and controlled" by defendant Glenn G. Goldan (hereinafter "Mr. Goldan" or "Defendant Goldan"), id., at ¶ 20, that Mr. Goldan knew of the agreement, id., at ¶ 21, and that

-4-

despite his knowledge of the agreement, he *personally* interfered with the corporate defendant's performance of its obligations under the marketing agreement, ordering agents of such defendant to not perform their obligations under the marketing agreement. Id., at ¶ 22.[4] Further, the plaintiff alleges that Mr. Goldan interfered with the contract by ordering the closing attorney "not to withhold commissions due RPM...." Id., at ¶ 23.[5]

In its Third Claim for Relief, plaintiff asserts a cause of action for defamation. Id., at ¶¶ 26-28. It alleges that Mr. Goldan "individually and on behalf of RDLG, has slandered and otherwise disparaged RPM with false statements concerning . . . the professionalism, ability, honesty, and integrity of RPM." Id., at ¶ 26. It goes on to allege damages "arising out of lost business opportunities . . . ." Id., at ¶ 27.

Plaintiff seeks compensatory as well as punitive damages.

## II.    The Motion to Dismiss

On the same day this action was removed, defendants moved to dismiss the

---

[4]    The court notes that the plaintiff stated in its complaint that Mr. Goldan "can be served with process at Reprop Financial Mortgage Investors, LLC, . . . ." Compl., at ¶ 2. In their Notice of Removal, the defendants states that Reprop Financial Mortgage Investors, LLC, is one of the members of RDLG, LLC. Notice of Removal (#1), at ¶ 6(a). Finally, review of the "Civil Summons" issued by the state court reveals that process was issued for Mr. Goldan at his business address. No return of service as to Mr. Goldan was provided in the removal package and the court notes the absence of such proof of service subsequent to removal. See Fed.R.Civ.P. 4(e).

[5]    The court assumes that plaintiff meant to state that the closing attorney was directed not to pay the commissions.

Complaint in its entirety, citing Rule 12(b)(5) and Rule 12(b)(6), Federal Rules of Civil Procedure. Defendants first contend that the Complaint should be dismissed as to Mr. Goldan under Rule 12(b)(5) for insufficient service of process, arguing that plaintiff failed to serve Mr. Goldan with the Summons and Complaint as required by Rule 4. Motion to Dismiss (#2), at p. 1.

Defendants also seek dismissal as to all claims asserted by plaintiff, contending that plaintiff fails to state a claim under Rule 12(b)(6). As to the First Claim for Relief, breach of contract, defendants argue that plaintiff cannot state a cause of action seeking lost or unpaid commissions because it is not a licensed real estate broker in North Carolina. Id. As to the Second Claim for Relief, tortious interference with contract asserted against Mr. Goldan, defendants contend that no cause of action is asserted because (1) Mr. Goldan is an officer of the corporate defendant, (2) no allegation is made that Mr. Goldan took any action for his personal benefit, and (3) there are no allegations that the corporate veil should be pierced. Id. As to the Third Cause of Action, defamation, defendants contend that the allegations are insufficient under Rule 12(b)(6) because plaintiff fails to allege publication of any defamatory statement to any third party and fail to allege any statement with such detail as to permit the court to determine whether such statement could plausibly be defamatory. Id., at p. 2.

## III.    Applicable Standards

### A.    Rules 12(b)(5)

On the day he removed this action, Defendant Goldan contended that he had not been properly served with process and is, therefore, entitled to dismissal under Rule 12(b)(5).   Where a motion to dismiss is filed based on insufficient process or insufficient service of process, affidavits and other materials outside the pleadings may be properly submitted and considered.  When a challenge to the adequacy or lack of process is made,

> the party on whose behalf service is made has the burden of establishing
> its validity when challenged; to do so, he must demonstrate that the
> procedure employed satisfied the requirements of the relevant portions
> of Rule 4 and any other applicable provision of law.

Light v. Wolf, 816 F.2d 746, 751 (D.C.Cir.1987) (internal quotations omitted). Where the procedural requirements of sufficient process and service of process are not satisfied, a court lacks power to assert personal jurisdiction over a defendant.  Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 514 (D.C.Cir.2002).  Inasmuch as the sufficiency of process and service of process concern the court's jurisdiction, consideration of materials outside the pleadings, such as affidavits, is appropriate. Dimet Proprietary, Limited v. Industrial Metal Protectives, 109 F.Supp. 472 (D. Del. 1952).

### B.    Rule 12(b)(6)

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989); Conley v. Gibson, 355 U.S. 41 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombley, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in their complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Ashcroft, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a

complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555.

## IV.    Discussion

### A.    Rule 12(b)(5)

Defendants contend that this court should dismiss the Complaint as to

Defendant Goldan because the plaintiff failed to serve such defendant. In response, the plaintiff contends that the defendants's Motion to Dismiss under Rule 12(b)(5) is premature inasmuch as the 120 days allowed for service under Rule 4 has not run. Defendants fail to address this responsive argument in their Reply.

The Complaint was filed in state court on September 20, 2010, see Notice of Removal (#1), at ¶ 1, this action was removed on October 14, 2010, id., and the Motion to Dismiss was filed the same day. The Federal Rules of Civil Procedure apply to removed actions. See Fed.R.Civ.P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."). Rule 4(m), therefore, provides the time for service, and provides in relevant part, as follows:

> **(m) Time Limit for Service.**
> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time.
> * * *

Fed.R.Civ.P. 4(m).

The issue of the time for service of parties after removal of an action from state court has been specifically addressed by the district court. In Patterson v. Brown, 2008 WL 219965 (W.D.N.C. Jan. 24, 2008), amended Patterson ex rel. Estate of Hemphill v. Brown, 2008 WL 619374 (W.D.N.C. Mar. 03, 2008), and reversed in part

on other grounds Patterson v. Whitlock, 2010 WL 3303749 (4th Cir. Aug. 23, 2010),[6]

Honorable Martin Reidinger, United States District Judge, held as follows:

> The Federal Rules of Civil Procedure require that a defendant be served "within 120 days after the complaint is filed." *See* Fed.R.Civ.P. 4(m). The Defendants argue that this provision means that the Plaintiff was required to serve them with process within 120 days of the filing of the state court complaint, and therefore, the Plaintiff's attempts at service under federal law were not timely. The Plaintiff argues, on the other hand, that the time limit for service under Rule 4(m) should run instead from the date of removal.
>
> The Middle District of North Carolina addressed this very issue in *Motsinger v. Flynt*, 119 F.R.D. 373 (M.D.N.C.1988). In that case, the defendant argued that the plaintiff's attempts to serve him after removal were untimely because Rule 4(m) required the plaintiff to serve him within 120 days after the complaint was filed in state court. The Court rejected the defendant's argument, holding that the Federal Rules of Civil Procedure applied to cases only after removal. *Id.* at 376-77 (*citing* Fed.R.Civ.P. 81(c)). The Court further noted that to apply the federal rules retroactively to state court pleadings that were otherwise properly filed under state law "may create real unfairness." *Id.* at 377. As the Court explained:
>
>> [I]t is possible that 120 days from filing of the complaint could pass without a defendant being served. Then, having notice of the action, a defendant could remove it to federal court and immediately move for dismissal pursuant to Rule 4(j) [now Rule 4(m) ], Fed.R.Civ.P. The plaintiff would immediately be in a predicament since 120 days would have passed since the filing of the original complaint and he would not have made a motion for an extension of time to serve process.
>
> *[I]d.* at 377 n. 5. The Court concluded that allowing a plaintiff 120 days from the date of removal to serve process "provides an appropriate

---

[6] Due to the limits of Electronic Case Filing, copies such unpublished decisions are placed in the electronic docket through incorporation of the Westlaw citations.

balance which accommodates the federal interest in insuring that process will be timely served yet does not penalize the plaintiff or give undue advantage to the defendant...." *Id.* at 377.

Other courts that have addressed this issue have also held that the 120-day time period for service of process in a removal action runs from the date of the removal, not the date that the state court complaint was originally filed. *See Cowen*, 411 F.Supp.2d at 721; *G.G.G. Pizza, Inc. v. Domino's Pizza, Inc.*, 67 F.Supp.2d 99, 102 (E.D.N.Y.1999); *Eccles v. National Semiconductor Corp.*, 10 F.Supp.2d 514, 519 (D.Md.1998); *see also Russo v. Prudential Ins. Co.*, 116 F.R.D. 10, 12 (E.D.Pa.1986) (rejecting retroactive application of Rule 4's 120-day period to service effected prior to removal).

The Court finds the reasoning of *Motsinger* and the other above-cited decisions to be persuasive. In the present case, the action was removed on November 17, 2006. Therefore, the Plaintiff had until March 19, 2007 to serve process on the Defendants pursuant to the Federal Rules of Civil Procedure.

Patterson, 2008 WL 219965, at 5 -6. The decision of the district court makes clear that (1) Rule 4(m) provides 120 days for service of process in an action removed from state court and (2) that the 120 days begins to run not from the date the Complaint was filed, but from the date the action was *removed* to federal court. In this case, the action was removed on October 14, 2010, and the defendants filed their Motion to Dismiss under Rule 12(b)(5) that same day. Clearly, under Patterson, the plaintiff had 120 days from such date to serve Mr. Goldan, providing no factual or legal basis for relief under Rule 12(b)(5).

The motion is, therefore, without merit and the undersigned is compelled to recommend that it be denied.

**B.    Rule 12(b)(6)**

**1.    First Cause of Action: Breach of Contract**

Defendants contend that the first cause of action for breach of contract must be dismissed because plaintiff, which is not a licensed real estate broker in North Carolina, seeks to enforce a contract for commissions stemming from the sale of real property in North Carolina. In response, plaintiff alleges that defendants' motion is premature inasmuch as the alleged illegality or invalidity of a contract is an affirmative defense and that it actually employed licensed brokers to conduct the sales. Response (#12), at p. 2.

In support of its argument that the sharing of commissions between licensed and unlicensed brokers of real estate does not make a contract illegal, plaintiff cites the court to Furr v. Fonville Morisey Realty, Inc., 130 N.C.App. 541, 545 (1998). Defendants have distinguished such case from the facts here.  Reply (#13), at 5.  More importantly, they have pointed out that such case has no legal significance in this case in light of post-Furr amendments to the North Carolina real estate broker licensure statute.   Amended the year after Furr was handed down,[7] the governing statute applicable to this case provides as follows:

**§ 93A-1.  License required of real estate brokers.**
From  and  after  July  1,  1957,  it  shall  be  unlawful  for  any  person,

---

[7]    The statute was again amended in 2005.

partnership, corporation, limited liability company, association, or other business entity in this State to act as a real estate broker, or directly or indirectly to engage or assume to engage in the business of real estate broker or to advertise or hold himself or herself or themselves out as engaging in or conducting such business without first obtaining a license issued by the North Carolina Real Estate Commission (hereinafter referred to as the Commission), under the provisions of this Chapter. <u>A license shall be obtained from the Commission even if the person, partnership, corporation, limited liability company, association, or business entity is licensed in another state and is affiliated or otherwise associated with a licensed real estate broker in this State.</u>

N.C.Gen.Stat. 93A-1 (2010)(emphasis added). At the time <u>Furr</u> was decided, the same statute provided as follows:

... it shall be unlawful for any person, ... corporation ... in this State to act as a real estate broker or real estate salesman, or directly or indirectly to engage or assume to engage in the business of real estate broker or real estate salesman or to advertise or hold himself or themselves out as engaging in or conducting such business without first obtaining a license issued by the North Carolina Real Estate Commission ... under the provisions of this Chapter.

N.C.Gen. Stat. 93A-1 (as reported in <u>Furr</u>, 130 N.C.App. at 545). Noticeably, the emphasized language in the current law - - the law applicable at the time the disputed contract was entered into - - was absent from the 1998 version of the law.

The current statute makes it unlawful for any person or entity to either directly or indirectly engage in the business of real estate broker without a North Carolina license, and makes it clear that mere association or affiliation of a licensed broker is insufficient. <u>Id.</u> This distinction between <u>Furr</u> and the current licensure requirement

has been recently addressed by this court. In <u>McAlister v. Hunter</u>, 634 F.Supp.2d 577 (W.D.N.C. 2009), Honorable Richard L. Voorhees, United States District Judge, held that an association of an unlicensed entity with a licensed entity is contrary to the present version of the statute, noting as follows:

> The purpose of this provision is especially clear in light of the circumstances surrounding its enactment. The provision was adopted the year after a North Carolina appeals court decision declared legal a commission sharing arrangement-similar to the one in the present case-between an unlicensed out-of-state real estate agent and a licensed North Carolina real estate broker.

<u>Id.</u>, at n. 4 (citation to <u>Furr</u> omitted). The court concluded that "the arrangement in this case is not one that is sanctioned by the North Carolina real estate laws." <u>Id.</u>, at 584. The plaintiff's reliance on <u>Furr</u> is, therefore, misplaced. Plaintiff's alleged association of licensed brokers in conducting the sale of real property was clearly insufficient as a matter of law. Absent plaintiff being licensed in this state, it was simply unlawful for it to sell real property it did not own in North Carolina. Plaintiff lacks standing to demand those commissions in this action, and plaintiff simply cannot assert a plausible claim for breach of contract under such circumstances.

The undersigned will now turning back to the original question posed: whether the breach of contract claim is susceptible to dismissal under Rule 12(b)(6) or whether contract invalidity is an affirmative defense more properly considered under Rule 56 or at trial. While the Federal Rules of Civil Procedure clearly govern this removed

action, the the North Carolina Supreme Court has long held that

> [w]hen the complaint states a valid claim but also discloses an unconditional affirmative defense which defeats the asserted claim ... the motion will be granted and the action dismissed.

Skinner v. E. F. Hutton & Co., 314 N.C. 267, 270 (1985).  Thus, the distinction between affirmative defense and failure to state a claim is one without consequence where, as here, defendants come forward with an unconditional affirmative defense derived from the Complaint.  Clearly, plaintiff has not alleged in its Complaint that it was, at any time relevant to the contract it seeks to enforce, a licensed North Carolina real estate broker. It is undisputed that acting as a North Carolina real estate broker without a North Carolina license is a Class 1 misdemeanor. N.C. Gen. Stat. § 93A-8.  North Carolina law specifically forbids enforcement of contracts involving criminal acts:

> If the statute, so construed, makes the doing of an act a criminal offense, one who has contracted to do the forbidden act may not, after performing his contract, sue in the courts to recover the agreed consideration for such performance.

Raab & Co. v. Independence Corp., 9 N.C. App. 674, 677 (1970) (citations and corresponding quotation marks omitted).  Even if the argument defendants make in the Motion to Dismiss were construed as an attempt to resolve an affirmative defense under Rule 12(b)(6) rather than at summary judgment or trial, North Carolina law makes it clear that the affirmative defense of illegality is unconditional and that

-17-

plaintiff is attempting to have this court enforce a contract which is, on its face, not just invalid, but unlawful as a matter of criminal law.

The undersigned is compelled, therefore, to recommend that the First Cause of Action for Breach of Contract be dismissed.

**B.    Tortious Interference With Contract**

Plaintiff next asserts a cause of action for tortious interference with contract. Although not served, Defendant Goldan moves to dismiss this claim because (1) a cause of action for tortious interference with an unlawful contract will not lie, (2) Mr. Goldan is an officer either of the corporate defendant or one of the members of the contracting parties, and (3) no allegation is made that, as a corporate officer, he interfered with contract for his own personal rather than corporate gain.

The elements of tortious interference with contract are: "(1) the existence of a valid contract between plaintiff and a third party; (2) knowledge by defendant of the contract; (3) acts by defendant to intentionally induce the third party not to perform the contract; (4) defendant's acts were committed without justification; and (5) actual damage to the plaintiff." Barker v.Kimberly-Clark Corp., 136 N.C.App. 455, 462 (2000) (citing Childress v. Abeles, 240 N.C. 667, 674 (1954)).    In this case, the cause of action for tortious interference with contract fails at both the first and third elements.

First, the cause of action fails as to the first element for the reasons discussed above concerning the invalidity of the contract.

Second, the cause of action fails because all of the allegations of the Complaint, when read together, reveals that Mr. Goldan was an officer of a contracting party or an officer of a member of a contracting party, and there is simply no allegation that he induced any anyone other than his own business associates to not perform a contract that is patently unlawful. The apparent implausibility of Mr. Goldan being a stranger to the contract is made manifest by the allegations of plaintiff's Complaint, wherein it alleges that Mr. Goldan "can be served with process at Reprop Financial Mortgage Investors, LLC, . . . ." Compl., at ¶ 2. Further, plaintiff does not dispute or challenge the statement that Reprop Financial Mortgage Investors, LLC, is one of the members of RDLG, LLC. See Notice of Removal (#1), at ¶ 6(a).

Third, reading the pleadings in a light most favorable to plaintiff, it is possible that plaintiff is attempting to allege tortious inference with contract by a corporate insider, a claim which North Carolina common law recognizes. The pleading requirements for tortious interference by an "insider" are applicable:

> In the context of interference with contract by an insider, however, the element that the defendant acted without justification is potentially vitiated by the defendant's corporate position. Officers, directors, shareholders, and other corporate fiduciaries have a "qualified privilege to interfere with contractual relations between the corporation and a third party." "The acts or a corporate officer in inducing his company to sever

contractual relations with a third party are presumed to have been done in the interest of the corporation."

Embree Constr. Group, Inc. v. Rafcor, Inc., 330 N.C. 487, 498 (1992)(internal citations omitted). To survive Rule 12(b)(6) in this context, however, plaintiff must allege facts that when taken as true could plausibly lead a finder of fact to conclude that the actions taken were for such defendant's *personal* rather than corporate interests. Id., at 499. The Complaint is silent as to what personal motivations Mr. Goldan had or even might have had in allegedly interfering with the marketing agreement.

For these reasons, the undersigned must recommend that the Motion to Dismiss the Second Cause of Action for tortious interference with contract be granted, and that this claim be dismissed.

## C.    Defamation

In its third cause of action, plaintiff asserts a claim for defamation. There are two separate torts encompassed by the term "defamation," those being libel and slander.

> Generally, "libel is written while slander is oral." "[W]hen defamatory words are spoken with the intent that the words be reduced to writing, and the words are in fact written, the publication is both slander and libel."

Gaunt v. Pittaway, 135 N.C.App. 442, 447 (1999)(citations omitted). In this case,

plaintiff contends that Mr. Goldan, "individually and on behalf of RDLG, has slandered and otherwise disparaged RPM with false statements concerning . . . the professionalism, abilities, honesty, and integrity of RPM." Compl., at ¶ 26. Thus, it appears that plaintiff's claim is limited to slander.

The elements of slander are that a statement (1) was made to a third person and (2) that such statement was false. Andrews v. Elliot, 426 S.E.2d 430, 432 (N.C. Ct. App. 1993). A slander *per se* occurs

> when considered alone without explanatory circumstances [the statement] (1) charges that a person has committed an infamous crime... (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.

Gaunt, 135 N.C.App. at 448 (citation omitted).

The problems identified in the motion to dismiss are that plaintiff has failed to allege the identities of the third parties to whom the statements were made (publication) and the content of the allegedly tortuous statements. First, because plaintiff must prove that the allegedly defamatory statements were made to third parties, West v. King's Dept. Store, Inc., 321 N.C. 698, 703 (1988), failure to allege plausible facts upon which a jury could find in plaintiff's favor on that element is fatal to the claim. Iqbal, supra. Further, plaintiff makes no attempt through amendment to identify those third parties. See Fed.R.Civ.P. 15(a)(1)(B). Instead, it simply argues the existence of such facts can be surmised through inference. Such inference is not

warranted by these pleadings inasmuch as plaintiff fails to even allege the statements were made to third parties, much less their names.

Second, because plaintiff has failed to allege the content of the statements - - other than legal conclusions as to the nature of the statements - - the court cannot effectively execute its gatekeeper responsibilities under North Carolina law. As Judge Voorhees found in another case,

> [t]he alleged defamatory statement or statements made or published by the defendant need not be set out verbatim in plaintiff's defamation complaint if alleged substantially *in haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory.

Mkt. Choice, Inc. v. New Eng. Coffee Co., 2009 WL 2590651, 5 (W.D.N.C. Aug. 18, 2009)(Voorhees, J.)(citations and corresponding quotation marks omitted).[8]  The district court further held that

> the proper standard for assessing the legal sufficiency of a claim for defamation focuses on the requirements of Rule 8(a). Under this standard, the complaint must allege enough facts to demonstrate that the claim is plausible on its face.

Id. (citations omitted).  The court simply cannot discern what was said to whom under what circumstances, all of which would have enabled the court to determine whether plaintiff has alleged a plausible claim.  Plaintiff's reliance on inferences to be drawn

---

[8]     Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

from what is clearly an insufficient claim, rather than simply amend the claim to allege to whom such statements were made and include some description of the statements *in haec verba*, makes the claim insufficient under Rule 8(a). <u>See</u> Fed.R.Civ.P. 15(a)(1)(B).

The undersigned will therefore recommend that the third cause of action be dismissed in accordance with Rule 12(b)(6) inasmuch as plaintiff has failed to allege enough facts to demonstrate that the claim is plausible on its face.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)    defendants' Rule 12(b)(5) Motion to Dismiss (#30) the claims against Defendant Goldan be **DENIED**; and

(2)    defendants' Rule 12(b)(6) Motion to Dismiss (#30) the Complaint in its entirety be **ALLOWED**, and that Complaint in 1:10cv233 be **DISMISSED** in its entirety for the reasons discussed above.

## <u>Time for Objections</u>

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be

filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

Signed: December 21, 2010

Dennis L. Howell
United States Magistrate Judge