# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

### CIVIL CASE NO. 1:10cv204
### (Consolidated with Civil Case No. 1:10cv233)

| | |
|---|---|
| RDLG, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     vs. | )_____ |
| | )    ____ |
| RPM GROUP, LLC; RPM | ) |
| GROUP BROKERAGE, LLC; | ) |
| FRED M. LEONARD, III; | ) |
| JESSICA LEWIS LEONARD; | ) |
| JASON BENTON; NICK JAMES; | ) |
| and DEXTER HUBBARD, | ) |
| | ) |
|     Defendants. | ) |
| _____ | )   **MEMORANDUM OF DECISION** |
| | )       **AND ORDER** |
| RPM GROUP, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     vs. | ) |
| | ) |
| RDLG, LLC and | ) |
| GLENN G. GOLDAN, | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

**THIS MATTER** is before the Court on the Motion to Dismiss filed by

RDLG, LLC and Glenn G. Goldan.  [Doc. 30].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, the Honorable Dennis L. Howell, United States Magistrate Judge, was designated to consider the motion to dismiss and to submit a recommendation for its disposition. On December 21, 2010, the Magistrate Judge entered a Memorandum and Recommendation in which he recommended that the motion to dismiss be granted. [Doc. 34]. RPM Group, LLC ("RPM") timely filed objections [Doc. 36], to which RDLG, LLC ("RDLG") has responded [Doc. 46].

## I.    PROCEDURAL AND FACTUAL BACKGROUND

This action arises out of a marketing agreement ("Marketing Agreement") for the sale of building lots in a residential development located in McDowell County, North Carolina, known as the Linville Falls Mountain Club and Preserve ("Linville Falls").

In the summer of 2010, RDLG, a California land development company, hired RPM, a real estate marketing firm located in Tennessee, to market and conduct sales of building lots in the Linville Falls development during an on-site sales event. The parties agreed to split upfront the marketing costs of $425,000. [RPM Complaint, Civil Case No. 1:10cv233, Doc. 1-1]. Id. at ¶12]. The parties further agreed that RPM would receive

100% of the net proceeds of the lot sales until it was reimbursed fully for its share of the marketing expenses, and that RDLG would, thereafter, recoup its costs in a similar manner. Once both parties recouped their marketing expenses, the parties agreed that RPM would receive a commission of 22% on the gross sales price of each lot sold. [Id. at ¶13].

After the on-site sales event resulted in far fewer lot sales than anticipated, RDLG initiated an action in this Court against RPM and others, asserting claims for fraudulent inducement, fraudulent misrepresentation, civil conspiracy, negligent misrepresentation, and unfair trade practices and seeking rescission of the parties' Marketing Agreement. [Doc. 1]. Three days later, RPM commenced an action in the McDowell County General Court of Justice, Superior Court Division, asserting a claim of breach of contract against RDLG for failing to fulfill its obligations under the Marketing Agreement, including assisting RPM in pricing the lots, providing plats and other documentation necessary for the sales, reimbursing marketing costs, and paying commissions to RPM. [Civil Case No. 1:10cv233, Doc. 1-1 at ¶16]. RPM further asserted claims of tortious interference with contract and defamation against RDLG's manager, Glenn Goldan. [Id. at ¶¶20-28].

On October 14, 2010, RDLG and Goldan timely filed a notice of removal to this Court and simultaneously moved to dismiss RPM's

Complaint. [Id., Docs. 1 and 2]. On December 7, 2010, these two civil actions were consolidated, with the earlier action commenced by RDLG designated as the lead case. [Doc. 29].[1]

On December 21, 2010, the Magistrate Judge filed a Memorandum and Recommendation, recommending that RPM's Complaint be dismissed in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 34]. Specifically, the Magistrate Judge concluded that RPM's breach of contract claim must be dismissed because RPM is not a licensed real estate broker in North Carolina and therefore cannot seek to enforce a contract for commissions stemming from the sale of real property in this State. [Doc. 34 at 14-18]. The Magistrate Judge further concluded that RPM's claims for tortious interference and defamation against Goldan were insufficient as a matter of law. [Id. at 18-23].

On January 4, 2011, RPM filed Objections to the Magistrate Judge's recommendation with respect to its breach of contract claim. [Doc. 36].[2] RDLG filed its Response to RPM's Objections on January 21, 2011. [Doc. 41]. Having been fully briefed, this matter is now ripe for disposition.

---

[1]Once these actions were consolidated, RDLG and Goldan's Motion to Dismiss was filed in the consolidated lead case, Civil Case No. 1:10cv204, as Document 30.

[2]RPM does not oppose the recommended dismissal of its claims for tortious interference with contract and defamation against Goldan. [See Doc. 36 at 10].

## II.   STANDARD OF REVIEW

### A.   Standard of Review Applicable to Objections to Magistrate Judge's Proposed Findings and Recommendation

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

## B.    Rule 12(b)(6) Standard of Review

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S.Ct. at 1949.

> [T]he Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth."  This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."
>
> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" as required by Rule 8. ... [E]ven though Rule 8 "marks a notable and

6

> generous departure from the hyper-technical,
> codepleading regime of a prior era, ... it does not
> unlock the doors of discovery for a plaintiff armed with
> nothing more than conclusions."

Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly,

550 U.S. at 555, 557, 127 S.Ct. 1955 and Iqbal, 129 S.Ct. at 1950).


## III.   DISCUSSION

North Carolina law prohibits any person or business entity from

engaging in the sale of real estate in North Carolina without proper

licensure.  N.C. Gen. Stat. § 93A-1.  A "real estate broker" is defined as

"any person, partnership, corporation, limited liability company, association

or other business entity who for compensation or valuable consideration or

promise thereof *lists or offers to list, sells or offers to sell, buys or offers to*

*buy, . . . or negotiates the purchase or sale or exchange of real estate . . .*

for others."  N.C. Gen. Stat. § 93A-2(a) (emphasis added).  Acting as a real

estate broker in North Carolina without a North Carolina license is a Class

1 misdemeanor.  N.C. Gen. Stat. § 93A-8.  The purpose of Chapter 93A "is

to protect sellers, purchasers, lessors and lessees of real property from

fraudulent or incompetent brokers and salesmen."  McArver v. Gerukos,

265 N.C. 413, 416, 144 S.E.2d 277, 280 (1965).

In the present case, it is undisputed that RPM is not licensed as a real estate broker in North Carolina.[3]  As such, any contract entered into by RPM to sell real estate in North Carolina would be illegal and unenforceable.  See Raab & Co. v. Independence Corp., 9 N.C. App. 674, 677, 177 S.E.2d 337, 339 (1970) (quoting McArver, 265 N.C. at 417, 144 S.E.2d at 280) ("If the statute, so construed, makes the doing of an act a criminal offense, one who has contracted to do the forbidden act may not, after performing his contract, sue in the courts to recover the agreed consideration for such performance.").

RPM contends that the parties' Marketing Agreement was not an illegal contract because RPM was permitted to, and did, engage licensed brokers to perform brokerage functions that by law it could not itself perform.  This argument, however, is belied by RPM's own allegations.  In its Complaint, RPM alleges that it entered into a Marketing Agreement with RDLG "whereby *RPM* [agreed to] *market for sale and conduct sales of*

---

[3]In deciding a Rule 12(b)(6) motion, the Court may take judicial notice of public records without converting the motion to one for summary judgment.  See Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994) (quoting United States v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991)); Whittington v. North Carolina Dep't of Juvenile and Delinquency Prevention, No. 1:05CV348, 2006 WL 909141, at *1 (W.D.N.C. Apr. 7, 2006).  The North Carolina Real Estate Commission maintains a public searchable database of all real estate brokers licensed in North Carolina, which is available at http://www.ncrec.gov/default.html.  As of the date of this Order, a search of this database produced no records to indicate that RPM is a licensed broker in North Carolina.

certain lots owned by RDLG" in exchange for a 22% commission.  [Civil Action No. 1:10cv233, Doc. 1-1 at ¶5] (emphasis added).  It is further alleged that "*RPM* performed all of its obligations under the Marketing Agreement and in accordance with the Marketing Plan."  [Id. at ¶15] (emphasis added).  Thus, it is RPM's contention that *RPM* itself, not any licensed broker on RPM's behalf, marketed and sold the lots on behalf of RDLG and that *RPM* therefore is entitled to commissions from those sales.  Absent RPM being licensed as a real estate broker in this State, however, the Magistrate Judge correctly concluded that it was unlawful for RPM to contract to sell this real property.   Having entered into an illegal contract, RPM cannot now maintain a cause of action to recover commissions for the sales of these lots.   See Raab, supra.

Furthermore, RPM's alleged association of licensed brokers to conduct the sales does not alter the illegality of the parties' contract.  As the Magistrate Judge correctly noted, the current version of N.C. Gen. Stat. § 93A-1 requires a party to hold a broker's license "even if [that party] is affiliated or otherwise associated with a licensed real estate broker in this State."  N.C. Gen. Stat. § 93A-1.  Thus, despite its alleged association with licensed brokers to conduct the sales of the Linville Falls property, RPM lacks standing to demand payment of commissions from these sales.

## IV.    CONCLUSION

Having conducted a *de novo* review of those portions of the Magistrate Judge's Memorandum and Recommendation to which objections were filed, the Court concludes that the proposed conclusions of law are consistent with current case law.

Accordingly, **IT IS, THEREFORE, ORDERED** that RPM's Objections to the Findings and Recommendation of the Magistrate Judge [Doc. 36] are **OVERRULED**, and the recommendation of the Magistrate Judge [Doc. 34] is **ACCEPTED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by RLDG and Goldan [Doc. 30] is **GRANTED**, and the Complaint of the Plaintiff RPM Group, LLC is hereby **DISMISSED**.

**IT IS SO ORDERED.**

Signed: May 2, 2011

Martin Reidinger
United States District Judge